*55 OPINION.
Teammell :
Petitioner alleges that the depreciation allowed by the Commissioner on its equipment is inadequate and has endeavored to prove that it is entitled to depreciation based upon a 6-year life instead of depreciation based upon a 10-year life as allowed by the Commissioner.- The only evidence introduced at the hearing was in reference to underground equipment, and in making an estimate of a 6-year life for underground equipment the witness stated that cars and rails had a life of from 6 to 8 years because some of the cars and rails were lost in the operation of the mine by falls of rock and squeezes. Losses of this character are not to be recovered in the form of depreciation, and have no relation to deductions allowed on account thereof. Since the 6-year life is determined by this factor it is in error, but aside from this fact, the Commissioner determined a composite rate of depreciation. In other words the assets above and under ground were grouped together. Even if it be shown that some of the assets had a shorter life than the average life of the group of assets, that would not be proof that the composite rate of depreciation determined by the respondent was erroneous, or that the petitioner is entitled to a greater deduction than that allowed.
Petitioner further claims that the depletion allowed by the Commissioner was- inadequate, and has endeavored to show that depletion should be based upon a smaller tonnage than that used by the Com *56 missioner, on the theory that certain large tracts of land could not be exploited from the openings existing in the property during the years in question. It does not dispute the fact that the coal existed in these tracts, nor has it shown by any testimony that the coal lands thus excluded from its estimate had no value. In fact, a witness for the petitioner admitted that these lands had value. The testimony merely showed that a portion of the coal could not be recovered from the existing openings. Furthermore, petitioner has failed to prove what the costs of these coal lands were, and has made no allocation of any cost to the lands containing coal which it contends was not recoverable.
The petitioner introduced in evidence a report by the Coal Valuation Section of the Income Tax Unit, and a report of a revenue agent which set forth various amounts representing costs of the properties and certain tonnages and a rate of depletion. The Commissioner, however, did not adopt the depletion rates or the depletion deduction used by the revenue agent or those shown in the coal valuation report submitted. Neither the revenue agent’s report nor the Coal Valuation Section’s report agree with the determination of the Commissioner. The determination of the Commissioner is presumed to be correct and this presumption is not overcome by reports of his subordinates which he does not adopt. Whether the Commissioner adopted the cost or the tonnage used by the revenue agent or in the Coal Valuation Section’s report is not shown. For lack of sufficient evidence to the contrary we are unable to find that the Commissioner erred in the determination of the depletion deduction for any of the years involved.
An examination of the record in regard to the fire loss claimed by the petitioner discloses a similar lack of evidence. There is nothing in the record which proves the cost of the total structures and equipment at mine No. 3 or the cost of the structures and equipment destroyed by fire. Petitioner showed that certain entries were made on the books before the fire but did not prove that such entries represented the actual cost of the properties. These entries were subsequently changed and the petitioner offered no proof that the changed figures represent the actual cost of the structures and equipment at mine No. 3.
In view of these conditions we are unable to determine that the Commissioner erred in disallowing the loss of $26,037.60 and in adding to net income an additional amount of $14,530.66, representing a gain from the fire.
Petitioner claimed a deduction of $30,000 as bonuses paid to its officers and employees for the fiscal year ending July 31, 1922. It is shown that on July 16, 1922, the directors authorized a payment at some future time of an undetermined amount to be based upon the *57 earnings for the calendar year 1922 in excess of $100,000. It is further noted that it .was not until October, 1922, after the close of the fiscal year that any entry was made on the books representing a payment pursuant to this resolution, and that on that date the entry specified that such payment was to be apportioned at the end of the year. Since the amount of $30,000 was not determined or determinable, and was not intended to be determined during the fiscal year ending July 31, 1922, and was not paid during such fiscal year, it is not an allowable deduction for the fiscal year ending July 31, 1922.
We are, therefore, of the opinion that the Commissioner was justi-¾^ fied in refusing to permit a deduction of $30,000 during the fiscal year ending July 31, 1922.
In presenting to the Board the issue relating to the running of the statute of limitations it is apparent that the petitioner overlooked the waiver dated April 18, 1925. This waiver was filed prior to the running of the statute of limitations for the fiscal year ending July 31,1920, or for the fiscal year ending July 31, 1921, since it was less than five years after the 1920 return was filed, and less than four years after the 1921 return was filed. The subsequent waivers dated December 14,1925, and November 16,1926, further extended the time in which assessment could be made up to December 31, 1925, which was beyond the time when the petition was filed with the Board. We, therefore, hold that the Commissioner is not barred by the statute of limitations from assessing taxes for the fiscal years ending July 31, 1920, and July 31, 1921.

Judgment will be entered for the respondent.